**NOT FOR PUBLICATION**

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-13-1566-KiTaPa |
| | ) | |
| STEVEN CARL GRONLUND and GINA MARIE GRONLUND, | ) | Bk. No.   6:12-14417 |
| | ) | |
| | ) | Adv. No.   6:12-1173 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| STEVEN CARL GRONLUND, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| KARL T. ANDERSON, Chapter 7 Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on July 25, 2014,
at Pasadena, California

Filed - August 19, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

―――――――――――――――

Appearances:    Andrew Edward Smyth, Esq., argued for appellant
Steven Carl Gronlund; Thomas J. Polis, Esq., of
Polis & Associates, APLC, argued for appellee, Karl
T. Anderson, Chapter 7 Trustee.

―――――――――――――――

Before:  KIRSCHER, TAYLOR and PAPPAS, Bankruptcy Judges.

――――――――――

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, Steven Carl Gronlund ("Debtor"), appeals the bankruptcy court's decision to deny his discharge at the request of Appellee, chapter 7[2] trustee Karl T. Anderson ("Trustee"). The bankruptcy court denied Debtor's discharge under § 727(a)(2)(A) and (B) and § 727(a)(4)(A) because he concealed and failed to disclose a material asset in his bankruptcy schedules and statement of financial affairs. We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Debtor has twenty years of experience owning and operating businesses, including mortgage and real property rental businesses. On February 23, 2012, Debtor and Gina Gronlund, his wife and co-debtor, filed their chapter 7 bankruptcy case. Debtor's initial Schedule B was very detailed, even listing pots and pans and where they were located in Debtor's residence. However, Debtor did not list a note related to Mexican real property ("Mexican property"), which he eventually valued at $450,000 (the "Mexican Note"). Pursuant to the terms of the Mexican Note, Debtor received a $2,500 "interest-only" payment each month. Debtor had been receiving payments on the Mexican Note since May 2008. The interest income was not specifically and separately listed in his initial Schedule I, nor was it listed in his initial Schedule G. Debtor testified, however, that the $2,500 payments might be included in the $9,000 per month gross income listed in his initial Schedule I.

Debtor signed his bankruptcy schedules under penalty of

---

[2] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-2-

perjury. He appeared at the § 341(a) meeting of creditors ("§ 341(a) meeting") and answered the Trustee's questions under oath. At the beginning of the meeting, Debtor reaffirmed that his bankruptcy schedules were accurate and needed no corrections. During the meeting, however, Trustee reviewed Debtor's tax return and noticed a large amount of earned interest income. Trustee asked Debtor about it. Debtor accurately stated that the earned interest income on his tax return reflected a $2,500 monthly payment he received on a note secured by Mexican property he sold to Sayed Rezai ("Rezai"). Trustee noted that this asset and income were not reflected in Debtor's schedules; Debtor agreed. When Trustee first asked about Rezai, Debtor responded, "Sayed Rezai, he is a -- somebody who bought my -- bought a property down in Big Bear." § 341(a) Tr. (Mar. 30, 2012) at 24:5-6. Later, Debtor corrected himself, stating the property in question was located in Mexico, not Big Bear, California. Debtor testified that Rezai lived in Mexico, that he was not sure whether Rezai had a place in the United States and that "[s]ometimes he doesn't pay me." Id. at 26:3. However, moments later when Trustee asked about the timing of the $2,500 payments, Debtor testified that they "just come[] in every month." Id. at 28:8-9. Debtor also testified that he "didn't even think about" the Mexican Note because he had sold the Mexican property years before. Id. at 24:15-22. Trustee continued the meeting to allow Debtor to amend his schedules to include the Mexican Note. Id. at 30:13-14.

**A. Trustee's adversary complaint**

Debtor did not file amended schedules in the six weeks following the § 341(a) meeting, so on May 17, 2012, Trustee filed

-3-

an adversary complaint seeking to deny Debtor's discharge. Trustee's complaint alleged Debtor affirmatively concealed the beneficial interest he held in the Mexican Note and made a false oath. The complaint pled claims for relief under § 727(a)(2)(A) and (a)(4)(A).

One week after Trustee filed the adversary proceeding, Debtor filed amended schedules. The Mexican Note, valued at $450,000, and the $2,500 monthly income were added. However, the amended schedules also asserted that the Mexican Note was over-encumbered by debts owed to Debtor's mother, his in-laws and the federal government of Mexico for Maritime Zone Taxes. These encumbrances were not listed in the original schedules. Further, Debtor had not mentioned these debts at the § 341(a) meeting when the Mexican Note was discussed. The Debtor alleged that the value of the insider claims secured by the Mexican Note totaled $390,000 and the tax liability totaled $80,000. No proofs of claim on any of these purported encumbrances were ever filed. Although the record is missing certain exhibits admitted at trial, Debtor introduced documents that he believed established the purported encumbrances against the Mexican Note. It is clear, however, that the bankruptcy court did not find these exhibits to be credible.

In Trustee's Trial Brief, Trustee argued that Debtor's discharge should be denied because he made a false oath in connection with the case and concealed the Mexican Note. Trustee argued that the combined evidence of Debtor failing to list the Mexican Note on his schedules, failing to disclose it during the first 30 minutes of examination at the § 341(a) meeting and, after disclosing it, claiming it was over-encumbered by insider claims

-4-

without documentary proof, proved Debtor's false oath under § 727(a)(4)(A) and concealment under § 727(a)(2)(A) and (B).

In his trial declaration, Trustee testified: that Debtor received 48 payments on the Mexican Note during the four years preceding his filing bankruptcy; that the 48 payments amounted to approximately $130,000, which the Trustee considered an "economically significant" asset; and that the checks Debtor received from Rezai arrived "each and every month," despite Debtor's claim at the § 341(a) meeting that sometimes he was not paid. Although Trustee stated in his declaration that a copy of the cancelled checks were attached as Exhibit #3, they were not, and we do not have a copy of them in the record. In any event, the checks were offered at trial and admitted. Trustee also testified that the checks Rezai sent to Debtor came from Rezai's personal residence in Escondido, California, despite Debtor's claim at the § 341(a) meeting that Rezai lived in Mexico.

Mauricio Leon de la Barra ("de la Barra") testified for Trustee as Special Mexican Real Estate Counsel. In his trial declaration, de la Barra testified: that what was being referred to as a "promissory note," the Mexican Note, throughout the adversary proceeding was more accurately described as a beneficial interest in a Mexican trust; that under Mexican law, an encumbrance in real property is perfected by recording the corresponding lien in the Public Registry of Property in the locality in which the real property is located; that he conducted a public records search for the Mexican property in January 2013; and that he found no encumbrances recorded against the Mexican property. Importantly, de la Barra further testified that the

-5-

value of the Mexican Note was approximately $530,000.

In Debtor's Trial Brief he argued that he lacked the requisite intent to satisfy the elements of both the false oath claim and the concealment claim because his omission of the Mexican Note in his initial schedules was inadvertent and not purposeful.

In his trial declaration, Debtor testified: that at the time he filed for bankruptcy his personal life and business dealings were chaotic; that his elderly in-laws lived with him and were failing in health; that he was supporting his severely injured brother-in-law and his family; that he was recovering from having to testify as a witness in a trial prosecuting his friend for murder, which depressed him; and that he was delinquent and defaulting on loans which led to eleven separate foreclosures of income-producing real properties. Debtor further testified that his income decreased during this time, that he was being sued by several lenders and that a restaurant he owned failed. He testified that historically he paid little attention to the details of his business transactions, but that "during this period[,] [he] paid virtually no attention to the everyday financial aspects of [his] businesses."

Debtor hired attorney Gary Quackenbush ("Quackenbush") to prepare and file his bankruptcy petition. Debtor directed his business bookkeeper, Laurie Provost ("Provost"), and business employee, Linda Meyer ("Meyer"), to "assist in the preparation and transmission of the necessary information to Quackenbush" rather than doing it himself. He asked Provost and Meyer to do this because of "[his] personal situation, the complexity of [his]

-6-

finances and because of their knowledge of [his] financial affairs." Debtor testified that Quackenbush received all the information necessary to accurately fill out his bankruptcy forms by February of 2012. Quackenbush gave Debtor a first draft of the petition and schedules later that month, which Debtor testified, were "replete with errors of all kind[s]"; Debtor, Provost and Meyer corrected them. Debtor stated he saw a second draft that also contained errors. Debtor testified he signed the third draft prepared by Quackenbush trusting that the petition and schedules were complete and accurate. Debtor terminated Quackenbush on July 24, 2012, shortly after Trustee filed his adversary complaint.

Provost testified in her trial declaration: that it was her duty as "point person" to be the primary contact with Quackenbush's office during the preparation of Debtor's bankruptcy petition and schedules; that Meyer was responsible for gathering information regarding Debtor's real properties and related matters; and that completing information requests from Quackenbush's office was challenging because of the fluctuating nature of Debtor's financial affairs.

Meyer testified in her trial declaration: that she supplied Provost a list of Debtor's real properties; and that her property list included the Mexican property as she received the monthly payments related to it.

**B.    The trial on Trustee's adversary complaint**

The bankruptcy court held a three-day trial in October 2013. Several witnesses testified, including Trustee, Debtor, de la Barra, Provost, Meyer and Gina Gronlund.

-7-

At trial, a transcript of the § 341(a) meeting was admitted into evidence and an audio recording of it was played.

Provost testified that she gathered the necessary information for Debtor's bankruptcy, including information about Debtor's real properties that she had received from Meyer, and transmitted it to Quackenbush's office. However, she testified it was not her job to review and correct the information. She testified that only Debtor reviewed and corrected the information supplied to Quackenbush.

Meyer testified that she also never reviewed drafts of the bankruptcy forms and that her only role was to gather information and give it to Provost. Meyer also reaffirmed her declaratory testimony that the Mexican property was included on the list of Debtor's real properties she supplied to Provost. After closing argument, the bankruptcy court took the matter under submission.

The bankruptcy court recited its oral findings of fact and conclusions of law on the record on October 16, 2013. After observing Debtor's demeanor while testifying under oath and examining the transcript of the § 341(a) meeting and audio recording of it, the court found that Debtor was not a credible witness because of inconsistencies in his testimony. The court denied Debtor's discharge for intentionally concealing the Mexican Note before and after filing bankruptcy in violation of § 727(a)(2)(A) and (B) and for knowingly and fraudulently, in connection with the case, making a false oath or account in violation of § 727(a)(4)(A) by omitting the Mexican Note from his schedules.

The bankruptcy court entered a judgment consistent with its

oral ruling on October 31, 2013.  This timely appeal followed.

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

1.   Did the bankruptcy court err when it denied Debtor's discharge under § 727(a)(2)(A) and (B)?

2.   Did the bankruptcy court err when it denied Debtor's discharge under § 727(a)(4)(A)?

## IV.  STANDARDS OF REVIEW

In an action for denial of discharge, we review:  (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo.  Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 F. App'x 589 (9th Cir. 2006).

Factual findings are clearly erroneous if they are illogical, implausible or without support in the record.  Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).  We give great deference to the bankruptcy court's findings when they are based on its determinations as to the credibility of witnesses.  Id. (noting that as the trier of fact, the bankruptcy court has "the opportunity to note variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.")(citation and quotation marks omitted).  If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous.  Anderson v. City of

-9-

Bessemer City, N.C., 470 U.S. 564, 573-75 (1985).

## V.  DISCUSSION

Debtor argues that the evidence does not support the bankruptcy court's decision that he violated § 727(a)(2) or (a)(4)(A).  Specifically, Debtor argues the bankruptcy court's denial of discharge was in error because it "ignored" that he voluntarily disclosed the omitted Mexican Note at the § 341(a) meeting.  Debtor also argues the bankruptcy court erred in finding he attempted to conceal it when he testified that the $2,500 monthly interest payments he received were sometimes late or missed.  In addition, Debtor argues that claiming the existence of encumbrances against the Mexican Note, even if not recorded, cannot be considered a "concealment."

In short, Debtor disputes the bankruptcy court's findings of fact.  He does not argue that the court applied an incorrect standard of law.  Therefore, our review is limited to determining whether the bankruptcy court's findings are illogical, implausible or without support in the record.

**A.    The bankruptcy court did not err in denying Debtor's discharge under § 727(a)(2).**

The bankruptcy court denied Debtor's discharge under both subsections of § 727(a)(2).  That section states:

> The court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed[,] (A) property of the debtor, within one year before the date of the filing of the petition, or (B) property of the estate, after the date of the filing of the petition.

-10-

§ 727(a)(2)(A), (B). A party seeking denial of discharge under § 727(a)(2) must prove two things: "(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property." Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997).

### 1. Concealment

Debtor argues the evidence does not support his intentional concealment of the Mexican Note. Specifically, Debtor disagrees that his testimony "[s]ometimes [Rezai] doesn't pay me," should have been considered an act of concealment. Additionally, Debtor argues that the insider encumbrances included in his amended schedules should not be considered evidence of concealment.

The bankruptcy court outlined what it found as evidence of Debtor's concealment of the Mexican Note. The evidence included failing to list the asset on the initial schedules, failing to list the $2,500 monthly payments from it, failing to disclose it "in response to several questions at the [§] 341(a) meeting of creditors," and Debtor's "evasive" and "contradict[ory]" answers concerning when Rezai makes payments on the Mexican Note. Trial Tr. (Oct. 16, 2013) 3:11-4:2. The court also found that Debtor's later claim that the Mexican Note was over-encumbered was evidence of concealment. Although the court included the timing of Rezai's payments to Debtor and the purported insider encumbrances in its analysis, the court also based its finding on two other circumstances of concealment that Debtor does not dispute: he failed to list the Mexican Note, and he failed to disclose it in response to questions during the beginning of the § 341(a)

-11-

meeting.

Debtor argues that because he voluntarily disclosed the $2,500 monthly interest payments when directly asked about the Mexican Note at the § 341(a) meeting, his discharge should not be denied because it shows the omission was inadvertent. Based on the above evidence, the bankruptcy court disagreed and described Debtor as "less than credible." Id. at 10:8-13. The record shows that Debtor's testimony was contradictory on several points. Even if Debtor volunteered the information about the $2,500 monthly interest payments when asked about it at the § 341(a) meeting, the bankruptcy court was free to consider all of the relevant evidence on this point and conclude that his omission of the Mexican Note was not inadvertent. Anderson, 470 U.S. at 573-75.

Further, Debtor's voluntary disclosure of the Mexican Note at the § 341(a) meeting does not overcome Debtor's failure to schedule it. Schedules are paramount for disclosure to creditors in chapter 7. Creditors rely on accurate schedules to determine whether to file a proof of claim. Revealing a valuable asset during the § 341(a) meeting is not sufficient to notify creditors because they rarely attend.

The evidence shows the timing of Debtor's concealment of the Mexican Note was both before and after filing bankruptcy. Prepetition, Debtor concealed the Mexican Note by failing to list it in his schedules and statement of financial affairs. He blamed his staff, his attorney, and his chaotic life for his failure to list the property. However, he signed the petition, schedules, and statement of financial affairs under penalty of perjury. Postpetition, Debtor failed to disclose the Mexican Note until

-12-

directly asked about it at the § 341(a) meeting.  He was evasive in his answers about where the property was located, where Rezai lived, when he sold the property to Rezai, and how much Rezai still owed him and claimed he forgot about it.  After disclosing the Mexican Note, he claimed he sometimes did not receive the payments on it.  Finally, once he amended his schedules to reflect the Mexican Note, Debtor asserted that it was fully pledged to pay insider claims and, therefore, had no value.  However, while Debtor attempted to substantiate these encumbrances at trial by submitting various documents (which are not included in the record), the bankruptcy court found the purported encumbrances were "nonexistent."  Trial Tr. (Oct. 16, 2013) 9:10-11.

The evidence presented supports the bankruptcy court's finding that Debtor concealed the Mexican Note both before and after filing bankruptcy within the meaning of § 727(a)(2)(A) and (B).  Therefore, the court's finding that Debtor concealed it is not illogical, implausible or without support in the record.

**2.    Intent to hinder, delay or defraud**

Debtor also argues the evidence does not support the bankruptcy court's finding that he had the requisite intent to hinder, delay or defraud.  Specifically, he argues "[t]here is no actual fraud in this case."  Debtor's argument on this point is misplaced because actual fraud is not required.

A debtor's intent need not be fraudulent to meet the requirements of § 727(a)(2).  Because the language of the statute is in the disjunctive, it is sufficient if the debtor's intent is to hinder or delay a creditor.  Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1281 (9th Cir. 1996).

-13-

The bankruptcy court found that, based on Debtor's conduct and the circumstances surrounding the filing of the petition and conduct after the petition was filed, Debtor had the requisite intent to hinder, delay or defraud. Important to the court was Debtor's twenty years of work experience and sophistication in real estate matters and the mortgage industry. With that in mind, the court found that "[Debtor's] assertion that he just forgot to schedule this property and its income or relied on his employees or counsel[,] don't relieve [him] of his obligations and, in fact, are just not credible." Trial Tr. (Oct. 16, 2013) 4:21-5:2. The court found that Debtor's employees did include the Mexican Note in a list they prepared. The court then discussed the testimony of these same employees confirming that, although they gathered information for the preparation of the bankruptcy schedules, it was understood by everyone that Debtor was responsible for what the schedules contained. Another fact showing Debtor's intent was his omission of the only asset he owned of any value — the Mexican Note — as all of his other assets "were of no value or were underwater." Id. at 8:14-19.

The combination of Debtor's business sophistication and the fact that the "only asset of value" was omitted support the bankruptcy court's finding that Debtor's concealment of the Mexican Note was to hinder, delay or defraud his creditors within the meaning of § 727(a)(2). The record also supports the court's finding that Debtor, at minimum, acted with reckless indifference to the truth, thereby establishing that his discharge could be denied under § 727(a)(2). Id. at 10:25-11:2.

Accordingly, the bankruptcy court did not err in denying

-14-

Debtor's discharge under § 727(a)(2)(A) and (B).

**B. The bankruptcy court did not err in denying Debtor's discharge under § 727(a)(4)(A).**

Section 727(a)(4)(A) states: "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." § 727(a)(4)(A). "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007).

To obtain a denial of discharge under § 727(a)(4)(A), the objector must show: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." In re Retz, 606 F.3d at 1197.

**1. False Oath**

The bankruptcy court found that Debtor omitted the Mexican Note from his schedules and statement of financial affairs, failed to list the $2,500 payments he received from Rezai in his monthly income, and failed to disclose the Mexican Note in response to several questions at the § 341(a) meeting. The court also found that Debtor's answers were evasive once he disclosed its existence. Further, after disclosing the Mexican Note in his amended schedules, Debtor claimed, without any documentary evidence in support, it was over-encumbered and valueless.

Debtor does not dispute that he omitted the Mexican Note. Nor does he dispute that he represented the Mexican Note was over-encumbered in his amended schedules. The evidence in this case

-15-

established that Debtor made a false oath. Therefore, the bankruptcy court did not clearly err in finding that Debtor made a false oath in his original schedules, statement of financial affairs and his amended schedules.

### 2. Materiality

A fact is material "'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" In re Khalil, 379 B.R. at 173. An omission or misstatement that "detrimentally affects administration of the estate" is material. Wills v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999)(citing 6 Lawrence P. King et al., COLLIER ON BANKRUPTCY ¶ 727.04[1][b] (15th ed. rev. 1998)).

Debtor's oath related to a material fact. The existence of the Mexican Note is material because it is a valuable asset worth at least $450,000 based on Debtor's own testimony or approximately $530,000 based on de la Barra's testimony. Further, it clearly bears a relationship to Debtor's business transactions or estate and, because of its highly valuable nature, its omission detrimentally affected the administration of the estate. Debtor disputed the overall value of the Mexican Note claiming it was over-encumbered with security interests in connection with several loans he received from his mother and his in-laws. However, after considering Debtor's paltry documentary evidence of this, the bankruptcy court found that the purported security interests claimed by Debtor were "nonexistent." No evidence existed of any loan payments made to Debtor's mother or his in-laws. No

-16-

documents existed showing any transfer of the beneficial interest from Debtor to his mother or his in-laws. No recordation of any loan, security interest or beneficial interest transfer existed in the property records in Mexico.

The bankruptcy court found that the Mexican Note was worth "at least $300,000, probably closer to $400,000, earning $2,500 per month in interest, when at the time the initial schedules were filed, the Debtor's total income was $9,000." Trial Tr. (Oct. 16, 2013) at 11:17-24. Put simply, because of the value of the Mexican Note, the bankruptcy court found "[t]he omission was material." Id. at 11:24. We see no clear error in that finding.

**3. Knowingly Made**

A debtor "'acts knowingly if he or she acts deliberately and consciously.'" In re Khalil, 379 B.R. at 173 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 883 (9th Cir. BAP 2005)).

The bankruptcy court found Debtor knowingly omitted the Mexican Note because Debtor "consciously signed the schedules and the various declarations related to the schedules and statements of financial affairs, later signed the amended schedules declaring that these documents were true and correct, and the Defendant made the same statements and testified in the same manner at the [§] 341(a) meeting." Trial Tr. (Oct. 16, 2013) 12:2-7. Further, the record shows Debtor revised two initial drafts of his schedules that were both "replete with errors of all kind[s]," but later testified that he signed the third draft believing them to be complete and accurate. The bankruptcy court also found "[t]he asset provided $2500 of interest per month at the time the case was filed." Id. at 8:20-21. The court went on, "[t]his is a

-17-

substantial portion of the Debtor's monthly income of about $9,000 a month in the original schedules," and so "it's not something that someone just forgets." Id. at 8:21-24. We do not perceive any clear error in the bankruptcy court's finding that Debtor's false oath was made knowingly.

### 4. Fraudulent Intent

A debtor acts with fraudulent intent when: (1) the debtor makes a misrepresentation; (2) that at the time he or she knew was false; and (3) with the intention and purpose of deceiving creditors. In re Retz, 606 F.3d at 1198-99. Fraudulent intent is typically proven by circumstantial evidence or by inferences drawn from the debtor's conduct. Id. at 1199. Circumstantial evidence may include showing a reckless indifference or disregard for the truth. Id.; In re Wills, 243 B.R. at 64 (intent may be established by a pattern of falsity, debtor's reckless indifference, or disregard of the truth).

The bankruptcy court found that the evidence establishing Debtor's intent and the denial of his discharge under § 727(a)(2) also supported a finding of fraudulent intent under § 727(a)(4)(A). Alternatively, the evidence showed that Debtor had at least acted with a reckless indifference to the truth, which also satisfies the requisite intent under § 727(a)(4)(A). We agree. The evidence supports the bankruptcy court's finding that Debtor acted with fraudulent intent to deceive creditors when he omitted the Mexican Note from his schedules and statement of financial affairs. Thus, it is not clearly erroneous.

The bankruptcy court did not err when it determined that Debtor knowingly and fraudulently made a false oath in connection

-18-

with his case that related to a material fact. Therefore, it did not err in denying Debtor's discharge under § 727(a)(4)(A).

## VI.   CONCLUSION

For the reasons set forth above, we AFFIRM.